IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Derek Clements, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 2:22-2069-RMG |
| | ) | |
| v. | ) | |
| | ) | |
| Lloyd J. Austin, III, Secretary of Defense, *et al.*, | ) | |
| | ) | |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |
| | ) | |

This action involves the claims of twenty-four plaintiffs who challenge the Department of Defense's COVID-19 vaccination policy and the individual decisions of their respective branches or military academies denying their applications for a religious exemption. The Plaintiffs include eight active-duty members of the armed forces stationed in five different states, a reservist stationed in Georgia, and fifteen cadets enrolled in military service academies located in New York, Colorado and Connecticut. Four of the twenty-four Plaintiffs are stationed in the District of South Carolina.[1]

---

[1] The eight active-duty servicemen and servicewomen include Plaintiffs Clements, Kloster, Pokrant, and Vasiliu stationed in the South Carolina; Plaintiff Babcock stationed in Colorado; Plaintiff Carey stationed in Georgia; Plaintiff Hall stationed in Alabama; and Plaintiff Wilburn stationed in Washington State. The single reservist, Plaintiff Baumann, is stationed in Georgia. The military service academy cadets include Plaintiffs Beggs, Cass, Ford, Paul, Pym, Shaffer, and Staiger enrolled at the United States Air Force Academy in Colorado, Plaintiffs Penney and Wojtkow enrolled at the United States Military Academy at West Point in New York, and Plaintiffs N. Aime, T. Aime, Galdamez, D. Johnson and J. Johnson enrolled at the United States Coast Guard Academy in Connecticut. Plaintiff Suess recently graduated from the Air Force Academy but has been denied his commission because of his unwillingness to comply with the branch's vaccine mandate.

The matter before the Court is Defendants' motion to sever the claims of the twenty-four plaintiffs and to dismiss twenty of those cases which lack venue in the District of South Carolina. (Dkt. No. 15).  Plaintiffs have filed a memorandum in opposition. (Dkt. No. 21).  For reasons set forth below, Defendants' motion is granted.

## The Motion to Sever

A motion to sever requires the application of Rules 20 and 21 of the Federal Rules of Civil Procedure.  Rule 20 sets forth a liberal standard for joinder, allowing the joining in a single civil action persons who assert claims "arising out of the same transaction, occurrence, or series of transactions or occurrences."  Rule 21 abandons the common law rule of "misjoinder," but authorizes trial courts to "add or drop a party" or "sever any claim against a party."   In addressing a motion to sever, courts consider the following factors:

1. Whether the issues sought to be tried separately are significantly different from one another;

2. Whether the separable issues require different witnesses and different documentary proof;

3. Whether the party opposing severance would be prejudiced if granted; and

4. Whether the moving party would be prejudiced if the claims are not severed.

*See Grayson Consulting, Inc. v. Cathcart*, No. 2:07-2992-DCN, 2014 WL 1512029 at *2 (D.S.C. 2019).

It is important to note at the outset the nature of the claims presently pending before the Court.  Each claim involves a challenge to a mandatory vaccination policy.  Nineteen of the Plaintiffs assert claims under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1 *et seq*.

2

("RFRA") and/or the Free Exercise Clause of the First Amendment of the United States Constitution. Plaintiffs have also asserted claims under the Administrative Procedures Act, 5 U.S.C. § 551, *et seq.*, and a claim that Plaintiffs have been denied procedural due process. (Dkt. No. 1, ¶¶ 77-118).

Each Plaintiff has applied for a religious exemption from the mandatory vaccination policy and each application has been reviewed by multiple layers of decisionmakers within each Plaintiff's military branch or service academy. Where a party asserts that a Federal Government policy burdens his or her religious practice, the Government, to prevail, must demonstrate that its policy is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest. § 2000bb-1(b); *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1881 (2021). The Court is required to make an individualized assessment of each Plaintiff's claim under RFRA and the First Amendment. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726-27 (2014).

The Government's obligation to demonstrate that the vaccination policy, *as applied to an individual Plaintiff*, is the least restrictive means available requires a fact-intensive presentation that addresses, among other things, the individual job duties of each Plaintiff, the specific work environment of each Plaintiff, the risk of transmission posed by those job duties and work environment, the potential consequences of a COVID-19 outbreak on the functions of that work area, the practicality and effectiveness of proposed alternatives to mandatory vaccination in regard to each Plaintiff's job duties, the medical history of each Plaintiff, and the nature and sincerity of each Plaintiff's asserted religious beliefs. Each Plaintiff has participated in a multi-layered review process that has involved various levels of supervision and assessments by medical and epidemiological specialists. As a result of these highly detailed reviews, each Plaintiff has an

extensive administrative record. A number of the Plaintiffs are still participating in their branch's or service academy's review process, which is not yet final.

The level of fact-intensive inquiry that a trial court must undertake is demonstrated in *Creaghan v. Austin*, No. 22-0981 (CKK), — F. Supp. 3d —, 2022 WL 1500544 (D.D.C. May 12, 2022), which involved a challenge to the Air Force's mandatory vaccination policy by a mission commander in the Space Force's National Reconnaissance Office. This office oversees satellite systems and space craft critical to national security. The plaintiff challenged the Air Force's mandatory vaccine policy and the denial of her application for a religious exemption. In addressing a motion for a preliminary injunction, the Court described the plaintiff's specific workspace, noting that it had limited air flow due to its top secret and enclosed environment. *Id.* at *3. The trial court received evidence from senior military officials and medical specialists who addressed the critical nature of the plaintiff's work and the potential consequences of her potential exposure to the COVID-19 virus, and the risks associated with transmission of the virus to her colleagues. *Id*. at *3-4. The Court made a careful and detailed assessment of the complex legal and factual issues in this single plaintiff case.

The joinder of the twenty-four claims before the Court would, by necessity, require separate mini-trials, each addressing in detail the highly individualized nature of the decision making in each application for a religious exemption. While it may appear at first blush that the claims of the two dozen Plaintiffs raise common claims and issues, the proper adjudication of the RFRA and First Amendment claims would, by necessity, require individualized assessments of the vastly different work assignments and duty stations of the Plaintiffs spread across at least eight states and require in each mini-trial the testimony of front line supervisors, other supervisory staff,

senior leadership at the applicable military base or service academy, and medical and epidemiological specialists involved in the individual applications for religious exemption.

In a similar case, the district court in *Crosby v. Austin*, No. 8:21-2730 (M.D. Fla. Feb. 22, 2022), addressed the issue of severance involving the claims of fifteen active-duty soldiers challenging the military's COVID-19 mandate. In severing the claims, the *Crosby* court explained:

> After careful consideration, the Court finds that severance in this case is appropriate. There are substantial factual differences among Plaintiffs' claims. As such, even if the fifteen Plaintiffs here satisfy the two-prong test for joinder, the differences between their claims are too numerous to promote judicial economy. Furthermore, it is clear that resolution of many of these claims—such as religious claims—would require a separate analysis and involve different proof and different witnesses, located in various places across the country. Under these factual circumstances, the Court finds that severance, rather than joinder, of Plaintiffs' claims is necessary to promote judicial economy.

*Crosby v. Austin*, (Dkt. No. 44 at 3).[2]

In sum, the joinder of these far-flung cases—across different states, military branches, service academies and work stations—is an uniquely poor idea. Although there are obviously some overlapping issues in the claims of the Plaintiffs, the differences in each individual case would predominate over those common issues of law and fact and would require two dozen mini-trials. Rather than promote judicial economy, as Plaintiffs allege, the jumbling of these highly individualized claims into a single action would be unwieldy and unmanageable. After carefully weighing all the relevant factors and the record presently before the Court, severing these twenty-four claims is plainly the proper course. The Court grants Defendants' motion to sever.

---

[2] After severing the fifteen claims before it, the *Crosby* court retained the single case in which the plaintiff had venue in the Middle District of Florida and dismissed the remaining cases for improper venue.

### Dismissal of Claims Due to Improper Venue

In an action where the defendants are an officer or employee of the United States, venue is proper under 28 U.S.C. § 1391(e) where:

1. a defendant in the action resides;

2. a substantial part of the events giving rise to the claim occurred; or

3. a plaintiff resides so long as no real property is involved.

Each of the Plaintiffs' claims, now severed, must demonstrate venue to be tried in the District of South Carolina. Four Plaintiffs, Clements, Kloster, Pokrant, and Vasilu, are stationed at Joint Base Charleston in the District of South Carolina and satisfy their venue requirements. The first named Plaintiff, Clements, will retain the original case number. Plaintiffs Kloster, Pokrant, and Vasilu, will each be given a separate case number. The remaining Plaintiffs, Babcock, Baumann, Carey, Hall, Wilburn, Beggs, Cass, Ford, Paul, Pym, Shaffer, Staiger, Suess, Penney, Wojtkow, N. Aime, T. Aime, Galdamez, D. Johnson, and J. Johnson, are dismissed without prejudice and may, if they choose, refile their claims in appropriate venues.

### Conclusion

Defendants' motion to sever (Dkt. No. 15) is **GRANTED**. Plaintiffs Clements, Kloster, Pokrant, and Vasilu will each be given separate case numbers. The remaining Plaintiffs are **DISMISSED WITHOUT PREJUDICE**.

**AND IT IS SO ORDERED**.

                                                              s/ Richard Mark Gergel
                                                              Richard Mark Gergel
                                                              United States District Court

July 27, 2022
Charleston, South Carolina